# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF KENTUCKY (Ashland Division)

| | | |
|---|---|---|
| John R. Grabill | : | Case No. |
| c/o Christopher Wiest | | |
| 50 E. Rivercenter Blvd., Ste. 1280 | : | |
| Covington, KY 41011 | | |
| | : | |
|     Plaintiff | | |
| | : | |
| v. | | |
| | : | |
| City of Vanceburg, Kentucky | | |
| c/o Dane Blankenship, Mayor | : | |
| 239 Front St | | |
| Vanceburg, KY 41179 | : | |
| | | |
| And | : | |
| | | |
| Mayor Dana Blankenship | : | |
| 239 Front St | | |
| Vanceburg, KY 41179 | : | |
| *In his official and individual capacities* | | |
| | : | |
| And | | |
| | : | |
| Joseph Paul Gilbert, Chief of Police | | |
| 189 Second St. | : | |
| Vanceburg, KY 41179 | | |
| *In his official and individual capacities* | : | |
| | | |
| And | : | |
| | | |
| Joseph Billman, Assistant Chief of Police | : | |
| 189 Second St. | | |
| Vanceburg, KY 41179 | : | |
| *In his official and individual capacities* | | |
| | : | |
|     Defendants | | |

## PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, PUNITIVE DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF WITH JURY DEMAND ENDORSED

    Plaintiff, by and through Counsel, and for his Verified Complaint for damages, punitive

damages, declaratory and injunctive, states as follows:

1

**Introduction**

1. It is clearly established law that an arrest cannot be maintained without probable cause. Defendants violated this clearly established law in their arrest of the Plaintiff on August 5, 2024, and they continue to violate state law by prohibiting the open carrying of firearms by citizens.

**Parties**

2. Plaintiff is a resident and citizen of Vanceburg, Kentucky, and the United States.

3. Defendant, City of Vanceburg, Kentucky (hereinafter "City"), is a duly incorporated Home Rule City under a mayor-council plan, as set forth in KRS Chapter 83A, located in Lewis County, Kentucky.

4. Defendant, Dana Blankenship, is and was at all times relevant hereto, the duly elected Mayor of the City, and pursuant to KRS 83A.130, all executive power regarding the City is vested in the Mayor, and, among other things, he has the power to direct city officers, officials, and employees.  As is relevant here, Defendant Blankenship acted at all times relevant hereto under color of law.  He is sued in his official capacity for prospective injunctive and declaratory relief, and in his individual capacity for damages, including punitive damages.

5. Defendant, Joseph Paul Gilbert, is and was at all times relevant hereto, the appointed Chief of Police for the City, and, as is relevant here, Defendant Gilbert acted at all times relevant hereto under color of law.  He is sued in his official capacity for prospective injunctive and declaratory relief, and in his individual capacity for damages, including punitive damages.

6. Defendant, Joseph Billman, is and was at all times relevant hereto, the appointed Assistant Chief of Police for the City, and, as is relevant here, Defendant Billman acted at all times relevant hereto under color of law.  He is sued in his official capacity for prospective injunctive and declaratory relief, and in his individual capacity for damages, including punitive damages.

## Jurisdiction and Venue

7. Subject matter jurisdiction over the federal claims and causes of action asserted by Plaintiff in this case is conferred on this Court pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

8. Subject matter jurisdiction over the state law claims and causes of action asserted by Plaintiff in this case is conferred on this Court pursuant to 28 U.S.C. §1367, because such state law claims arise from the same exact facts as the federal claims, and thus are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue in this district is proper pursuant to 28 U.S.C. §1391 and other applicable law.

10. Venue in this division is appropriate, since all of the deprivations of Plaintiff's Constitutional Rights occurred in Lewis County, Kentucky, and Defendants reside in this District and Division.

## Facts Common to all Claims

11. Plaintiff, John Grabill has routinely and regularly attended City Council meetings for the City of Vanceburg, Kentucky.

12. Plaintiff also regularly keeps and bears a firearm for purposes of self-defense as he has done for years, either concealed or open carried, as is typical for many within Lewis

3

County, Kentucky. Plaintiff is not disqualified by federal or state law from carrying firearms. Indeed, law enforcement coverage within Lewis County, Kentucky is sparse.

13. In spring, 2024, at a Vanceburg, Kentucky, council meeting, a citizen addressed council, and afterwards turned around and it could be seen that the citizen had a concealed firearm.

14. On approximately June 25, 2024, Plaintiff observed a sign on the door from the outside and into the City Council room at the city building, for the City that read: "Firearms are prohibited" (hereinafter "Firearm Sign"). Other Firearm Signs were posted on other doors.

15. The Firearm Signs were installed by direction of, and consultation with, Defendants Blankenship, Gilbert, and Billman.

16. There was no City ordinance that authorized or directed the Firearm Signs.

17. In response to the Firearm Signs, Plaintiff decided to undertake certain research to determine his rights and obligations, and complied with the Firearm Signs until he could determine their legality.

18. On July 12, 2024, Plaintiff scheduled and had a meeting with Lewis County Sheriff Johnny Bivens, and Lewis County Attorney Ben Harrison, thereafter, to determine and discuss the Firearm Signs. Plaintiff asked for clarification about his rights to carry his firearm in the City Council meeting, and the county attorney informed Plaintiff that he would conduct legal research on the issue and get back to Plaintiff.

19. On July 15, 2024, Lewis County Attorney Benjamin Harrison emailed the Plaintiff back, including a 5-page letter with a Kentucky Attorney General Opinion, concerning a

similar incident in Ashland, Kentucky. A true and accurate copy of that email, and the Kentucky Attorney General opinion, are attached as **Exhibit 1**.

20. The foregoing is consistent with Kentucky law, which provides, at KRS 65.870:

    (1) No existing or future city …, or any person acting under the authority of any of these organizations may occupy any part of the field of regulation of the … ownership, possession, carrying, storage, or transportation of firearms, ammunition, components of firearms, components of ammunition, firearms accessories, or combination thereof.

    (2) Any existing or future ordinance, executive order, administrative regulation, policy, procedure, rule, or any other form of executive or legislative action in violation of this section or the spirit thereof is hereby declared null, void, and unenforceable.[1]

21. On August 5, 2024, Plaintiff attended the City Council meeting, while open carrying his firearm, consistent with the advice of Lewis County Attorney Benjamin Harrison, and consistent with Kentucky law.

22. The City Council meeting was scheduled to begin at 5:30 p.m. on August 5, 2024, and Plaintiff arrived between 5:00 p.m. and 5:15 p.m. immediately prior to the start of the meeting.

23. Plaintiff was standing near the seating area within the City Council room, when Defendant Joseph Paul Gilbert approached him and asked him to step outside. Plaintiff stepped outside at the direction of Defendant Gilbert.

---

[1] KRS 65.870(7) is clear that "The provisions of this section shall not apply where a statute specifically authorizes or directs an agency or person specified in subsection (1) of this section to regulate a subject specified in subsection (1) of this section." And KRS 237.110 (16)(d) prohibits concealed, rather than open carrying. Further, KRS 237.115 provides that "the legislative body of a . . . city . . . may, by . . . ordinance, prohibit or limit the carrying of *concealed* deadly weapons in that portion of a building owned, leased, or controlled by that unit of government." KRS 237.115(2). Further, KRS 237.115 is clear that universities and colleges, unlike local governments, can generally prohibit the carrying of firearms, while local governments can only prohibit the concealed carrying of firearms. Here, of course, there was no ordinance, and the firearm was not concealed.

24. Defendant Gilbert informed Plaintiff that he could not carry his firearm, and pointed to Plaintiff's firearm. Defendant Gilbert also pointed to the Firearm Sign.

25. Plaintiff then explained that the Firearm Sign was not worth the paper it was written on.

26. Defendant Gilbert then informed the Plaintiff that he wished that Plaintiff would not re-enter the building to attend the City Council meeting, but Plaintiff responded: "I'm going in." As Plaintiff was re-entering, Defendant Gilbert stated that he would be back.

27. Plaintiff then quietly took his seat in the City Council room, between 5:05 p.m. and 5:20 p.m. He did not say anything and did not disrupt or disturb the meeting.

28. Defendant Gilbert then met with Defendants Blankenship and Billman, and they collectively determined that they would enforce the Firearm Sign and firearm restrictions against the Plaintiff.

29. Defendant Gilbert then returned to confront the Plaintiff approximately five minutes later, and showed Plaintiff a paper that discussed concealed carrying and Plaintiff asked Gilbert whether his firearm was concealed in any way, and Defendant Gilbert answered "no." Defendant Gilbert then showed Plaintiff a second page that prohibited carrying firearms in courtrooms, schools, and places that served alcohol, and Plaintiff again stated that none of those locations were the City Council room or meeting and Defendant Gilbert reluctantly agreed saying "let me make sure I've got it all, alright? Hang on." *See, also*, KRS 237.110(16).

30. Defendant Gilbert then left again, and again met with Defendants Blankenship and Billman, and they collectively determined again that they would enforce the Firearm Sign and firearm restrictions against the Plaintiff. Defendant Blankenship directed Defendants

Gilbert and Billman to arrest the Plaintiff if he insisted on attending the City Council meeting while open carrying his firearm.

31. Defendant Gilbert then came back approximately 10 or 15 minutes later, and showed Plaintiff yet another paper, with Defendant Gilbert asserting that the paper indicating that a property owner could restrict the carrying of firearms on their property. *See, also*, KRS 237.110(16). Plaintiff pointed out that this applied to private property (and again is not applicable to public property or to open carrying).

32. Defendant Gilbert told Plaintiff that he could enforce the private property restriction, and that he could enforce this restriction and force the Plaintiff to leave. Plaintiff informed Defendant Gilbert that Plaintiff did not believe this was the case or was applicable, and Plaintiff informed Defendant Gilbert that he had the right to attend the meeting because it was a public meeting. See KRS 61.810; KRS 61.840.

33. Defendant Billman came over to the Plaintiff and stated "John, they are not going to start this meeting until this is resolved," and the Plaintiff responded "so you are telling me that they [the Mayor, who presides] are not going to start the meeting?" And Defendant Billman told him that was the case. Defendant Billman stated that "we have always gotten along," and asked him to take the firearm to his vehicle, which Plaintiff perceived to be a threat.

34. Plaintiff informed Defendants Gilbert and Billman that he had an Opinion from the Kentucky Attorney General's office, that indicated that he could open carry legally at this meeting, and in response, Gilbert said he did not need or want to see that information.

35. Defendant Billman then turned to Plaintiff's wife, who was also present, and asked her to have Plaintiff take the firearm to his car, and her response was "I am not going to have him violate his constitutional rights."

36. For the avoidance of all doubt, the Plaintiff, in his interactions with Defendants Gilbert and Billman, never raised his voice, got upset, spoke in an antagonizing manner, or otherwise acted in a disorderly manner.

37. Defendant Gilbert then told Plaintiff "well I'm going to have to arrest you then," and the Plaintiff responded "just do what you gotta do then."

38. Plaintiff again informed Defendants Gilbert and Billman that he had an Opinion from the Kentucky Attorney General's office, that indicated that he could open carry legally at this meeting, and in response, Gilbert again said he did not need or want to see that information.

39. Defendant Gilbert then said "all right, come on," indicating to Plaintiff that he was under arrest.

40. Plaintiff further informed Defendant Gilbert (and Defendant Billman heard this) that he could be sued personally for this, and under prevailing law would not have qualified immunity. Defendant Gilbert indicated that he did not care.

41. Defendant Gilbert then escorted Plaintiff to the police area and seized his firearm by directing the Plaintiff to hand over his firearm. Defendant Billman then joined him during the firearm seizure and arrest.

42. These actions was also contrary to Kentucky law, which prohibits (1) any "person, unit of government" from "impair the validity of the right of any person to … possess, carry, or use a firearm," and further states that "[n]o unit of government shall … at any other time

… take, seize, confiscate, or impound a firearm … from any person," subject to exceptions not applicable here.

43. Plaintiff was charged by Defendants Billman and Gilbert, and at the direction and in concert with Defendant Blankenship, with criminal trespass third degree.  KRS 511.080.[2]

44. The definitions for that section are contained in KRS 511.090, and that section specifically provides that "(1) A person 'enters or remains unlawfully' in or upon premises when he is not privileged or licensed to do so;" and "(2) A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license or privilege unless he defies a lawful order not to enter or remain personally communicated to him by the owner of such premises or other authorized person."

45. There was no lawful order given to the Plaintiff to depart prior to arrest, as required by KRS 511.090, as the Firearm Sign and restrictions were unlawful.

46. After placing Plaintiff under arrest, Defendants turned the custody of Plaintiff over to the Lewis County Jailer, who took Plaintiff to the Mason County detention center.

47. Plaintiff was given an orange jumpsuit, a towel and a pair of flipflops, and was taken to a shower and told me to shower and put the jumpsuit and flipflops on and hand them all of his personal clothing and shoes. At that point, they gave Plaintiff a mat, pillow and blanket and took me to a cell with one other inmate in it.  At one point, an officer came by to check to see if Plaintiff needed anything or if he wanted to go out in the yard. Plaintiff was taken to the yard for a while and then returned to his cell.

---

[2] A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises.

48. Plaintiff was released the next day, on August 6, 2024.

49. On August 7, 2024, Plaintiff was permitted to retrieve his firearm from Defendants.

50. Plaintiff then hired an attorney to defend the baseless criminal charge, for the sum of a flat fee of $5,000.

51. Thereafter, the charge against the Plaintiff was dismissed on November 26, 2024, after a vigorous defense, and after the County Attorney confirmed that the Plaintiff was in no way disruptive and had a legal privilege under the Open Meetings Act to attend the meeting.

52. The Firearm Signs remain to the present, and Defendants continue to enforce them, notwithstanding legal prohibitions on doing so. Plaintiff, for his part, has a present intention to open carry firearms at City Council meetings at the City, but reasonably fears doing so given Defendants past enforcement against him. Plaintiff thus seeks injunctive relief against the official capacity Defendants.

53. Plaintiff has been damaged as a consequence of the foregoing, including: (i) economic damages in the amount of $5,000 for attorney fees to defend against the baseless false arrest and violation of the Second Amendment; and (ii) mental distress, pain and suffering, humiliation, and other damages in an amount to be determined at trial.

54. Plaintiff further seeks punitive damages against Defendants Gilbert, Billman, and Blankenship, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against these Defendants, in their individual capacities, in an amount to be determined at trial.

## COUNT I – Violation of the Fourth Amendment (42 USC § 1983, all Defendants)

55. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

56. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

57. The arrest of Plaintiff by Defendants Gilbert and Billman, and at the direction of Defendant Blankenship, was without probable cause under clearly established case law. *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010); *Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012); *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005).

58. Further, in addition to his personal facilitation and participation, as described herein, Defendants Billman and Blankenship are liable under a failure to intervene theory because they observed or had reason to know that an illegal arrest without probable cause was going to occur, had reasonable opportunity to intervene, and they failed to intervene, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).

59. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the Commonwealth of Kentucky, subjected the Plaintiff, a citizen of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the party injured under 42 U.S.C. §1983.

60. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, Plaintiff has suffered various damages, including, without limitation, mental distress, pain and suffering, humiliation, economic damages, and other damages, such as will be proven at trial, which exceeds $25,000.

61. Defendant, City of Vanceburg is likewise liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing Fourth Amendment violations, because (i) officials with final decision making authority ratified illegal actions; (ii) the City had and may still have a policy of inadequate training or supervision, including the failure to investigate, supervise, and take appropriate action with respect to Defendants, despite the existence of prior legitimate complaints against him for similar unconstitutional misconduct; and (iii) the City had, at all times relevant hereto, and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

62. Plaintiff further seeks punitive damages against Defendants Gilbert, Billman and Blankenship, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against these Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $25,000.00, exclusive of interest and costs.

63. Plaintiff further seeks his reasonable attorney fees and costs under 42 U.S.C. § 1988 for these violations.

64. Plaintiff further seeks prospective injunctive relief against further arrests by Defendants without probable cause for open carrying a firearm to city council meetings.

**COUNT II – Violation of KRS 65.870**

65. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

66. Defendants City, Gilbert, Billman, and Blankenship, each either a "existing or future city, …or any person acting under the authority of any of these organizations" was prohibited

by KRS 68.870 from occupying "any part of the field of regulation of the … ownership, possession, carrying, storage, or transportation of firearms, ammunition, components of firearms, components of ammunition, firearms accessories, or combination thereof."

67. Defendants City, Gilbert, Billman, and Blankenship, issued a "executive order, administrative regulation, policy, procedure, rule, or any other form of executive or legislative action" in violation of KRS 65.870 or the spirit thereof, namely the Firearm Signs and prohibition on carrying weapons, in contravention of KRS 65.870(2).

68. Further, pursuant to KRS 65.870(4), immunities are waived, and suit can be brought, because Plaintiff is a person who was "adversely affected by any … administrative regulation, executive order, policy, procedure, rule, or any other form of executive or legislative action promulgated or caused to be enforced in violation of this section" for injunctive and declaratory relief.

69. Pursuant to KRS 65.870(4), "[a] court shall award the prevailing party in any such suit: (a) Reasonable attorney's fees and costs in accordance with the laws of this state; and (b) Expert witness fees and expenses."

70. Further, pursuant to KRS 65.870(5), "the court shall declare the improper …. administrative regulation, executive order, policy, procedure, rule, or other form of executive or legislative action specified in subsection (1) of this section null, void, and unenforceable, and issue a permanent injunction against the person or organization specified in subsection (1) of this section prohibiting the enforcement of such … administrative regulation, executive order, policy, procedure, rule, or any other form of executive or legislative action specified in subsection (1) of this section."

71. Thus, permanent injunctive relief is appropriately issued against Defendants City, Gilbert, Billman, and Blankenship, and against the Firearm Signs and restrictions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

A. That Plaintiff be awarded money damages, including compensatory and punitive damages, against the individual capacity Defendants, in an amount to be proven at trial, and exceeding $25,000.00, exclusive of interest and costs;

B. That Plaintiff be awarded compensatory money damages against the City of Vanceburg, in an amount to be proven at trial, and exceeding $25,000.00, exclusive of interest and costs;

C. That Plaintiff be awarded prospective injunctive relief prohibiting enforcement of the Firearm Signs and restrictions;

D. That trial by jury be had on all issues so triable;

E. That Plaintiff be awarded his costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

F. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Christopher Wiest_____      /s/Patrick Flannery_____
Christopher Wiest (KBA 90725)         Patrick Flannery (KBA 92548)

| | |
|---|---|
| Chris Wiest, Atty at Law, PLLC<br>50 E. Rivercenter Blvd. Ste. 1280<br>Covington, KY 41011<br>513/257-1895 (v)<br>chris@cwiestlaw.com<br>**Attorneys for Plaintiff** | Patrick Flannery Law, PLLC<br>PO Box 1269<br>Olive Hill, KY<br>606/286-9038 (v)<br>Flannerylaw@gmail.com |

## JURY DEMAND

Pursuant to FRCP 38 and other applicable law, Plaintiff demands trial by jury on all causes so triable.

/s/ Christopher Wiest_____<br>
Christopher Wiest (KBA 90725)

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, John R. Grabill, declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on December 16, 2024.

_____
John R. Grabill